(31 Misc. Rep. 440.)

PEOPLE ex rel. PETTIT v. KNOX et al., Civil Service Commissioners.

(Supreme Court, Special Term, New York County. May, 1900.)

OFFICERS—CITY COURT CLERK—CIVIL SERVICE.

    Laws 1899, c. 370, § 28, passed April 19th, provides that all merit and eligible lists of persons examined under civil service rules prior to the passage of the act shall be continued in force, subject to all reasonable regulations as the rules shall prescribe; and section 29 declares that the repeal of the prior laws shall not affect any accruing or accrued right. Section 13 fixes the term of eligibility for each eligible list at not less than one, nor more than four, years, and enacts that a new list shall be created for a stated position or group of positions, only when there is no proper list from which an appointment may be made. Rule 28 provides that eligible lists from examinations completed prior to April 15, 1899, in which the papers had not been completely rated, or the result completely tabulated, should become eligible lists in full force from the date of promulgation of the rules or from the date of subsequent completion of the list. *Held*, that plaintiff, who had taken an examination for assistant clerkship in the criminal courts of the boroughs of Manhattan and the Bronx, in March, 1899, could not be deprived of his standing on the eligible list within the year by a list made up from a subsequent examination for assistant clerkships, which position had been classified in the same competitive schedule since plaintiff's examination.

Action by the people, on the relation of Richard Tone Pettit, against Charles H. Knox and others, civil service commissioners, for writ of mandamus. Judgment for relator.

Frederick L. Taylor, for relator.

John Whalen, Corp. Counsel, and Charles W. Ridgway, for respondents.

LEVENTRITT, J. In January, 1899, the relator duly filed an application for examination to the position of assistant court clerk. Under the laws, rules, and regulations then in force, the relator, upon qualifying, would have become entitled to be placed on the eligible list for that position in the courts of general and special sessions, and in the city magistrates' courts of the boroughs of Manhattan and the Bronx. Laws of 1897, c. 378 (Charter) §§ 1390, 1400; Regulations of the Municipal Civil Service Commission, approved March 5, 1898. An examination was had on March 16, 1899, which the relator passed, standing first, receiving a rating of $93^{40}/_{100}$ per cent. His name was, however, properly placed second on the eligible list, preference being given a veteran, as provided by law. This list was promulgated on July 16, 1899. The veteran was subsequently appointed to a vacancy, so that the relator became entitled to the next appointment. Thereafter request was duly made of the respondents for a list designating the men eligible to fill a vacancy in the position of assistant court clerk in the city magistrate's court in the borough of Queens. By virtue of the charter provision referred to, requiring appointees to the

city magistrate's court in the boroughs of Brooklyn, Queens, and Richmond to be residents of the borough in which the court is located, the respondents ordered a new examination, inasmuch as the list of July 16th contained no resident of the borough of Queens. This examination was held on November 6, 1899. It was not, however, confined to residents of the borough of Queens, but embraced residents of all the boroughs of the city, including as well applicants to the assistant clerkships in the city court of the city of New York, which, since the examination of March 16, 1899, had been classified in the same competitive schedule. The relator did not participate in the examination of November 6, 1899. This resulted in the formation of a new eligible list, on which one veteran and two candidates, who had received a higher percentage than the relator had on the examination of March 16th, were placed ahead of him, so that his name was set back to fourth place. No resident of the borough of Queens appears on this list, which was promulgated January 29, 1900, and which, according to the opposing affidavits, was again limited to candidates for positions in the criminal courts. The relator now claims that in so far as the list of January 29, 1900, deprived him of his standing, acquired under the examination of March 16, 1899, it is violative of the provisions of the civil service law, and he asks that the commissioners be compelled by mandamus to restore him to the head of the list.

He is entitled to the relief sought. Section 28 of the White act (chapter 370, Laws 1899) contains the provision:

"All merit and eligible lists of persons examined prior to the passage of this act, under the civil service rules and regulations in force at the time of such examination, shall be continued in full force and effect as if formed under the provisions of this act, subject, however, to such reasonable regulation and revision as the rules shall prescribe."

Section 29 declares, among other things, that the repeal of prior laws therein provided for shall not impair or affect any accruing, accrued, or acquired right. Section 13 fixes the term of eligibility for each eligible list at not less than one nor more than four years, and requires that appointments be made from the list most nearly appropriate for the group in which the position to be filled is classified, and that "a new list shall be created for a stated position or group of positions only when there is no appropriate list existing from which appointment may be made." It will be observed that the relator was examined before the White law was passed, and that the list of July 16, 1899, on which he stood second, was promulgated after the White law went into effect (April 19, 1899).

Among the municipal civil service rules of the city of New York, as approved by the state civil service commission, there is one to meet this very situation. Rule 28 reads in part:

"Eligible lists from examinations completed prior to April 19, 1899, in which the papers had not been completely rated or the results had not been completely tabulated or entered, should become eligible lists in full force from the date of the promulgation of these rules, or from the date of the subsequent completion of such list."

It thus appears that the list of July 16, 1899, based on the examination under the prior law, became an effective eligible list under the

White act, and that any rights which the relator had acquired under that examination continued, and could not be impaired or infringed for the period of at least one year from July 16, 1899. White Law, supra, § 13.

The only question is whether that was an appropriate list from which to fill positions for which the relator had qualified. He was ineligible to fill the vacancy in the borough of Queens, which was made the occasion of a new examination in all the boroughs. Charter, § 1390, supra. But the relator's original application was limited to assistant clerkships in the criminal courts of the boroughs of Manhattan and the Bronx, and the examination held on March 16, 1899, accomplished its purpose so far, at least, as concerned available candidates for those boroughs. The resultant list did not become inappropriate for Manhattan and the Bronx, because no candidate appeared or qualified for Queens. A separate examination could have been held for that borough, or for the newly-added city court clerkship. Under regulation 8 of the rules under which the relator applied, as well as under regulation 8 of the rules now in force, he could properly limit his application to any particular office or offices in the service, so that the appropriateness of the list of July 16, 1899, for the criminal courts in Manhattan and the Bronx, was in no way affected by the request for an eligible candidate for the borough of Queens, or by the inclusion of the city court position. The new examination for all the boroughs was neither the "reasonable regulation" nor the proper "revision" contemplated by section 28 of the White act. An appropriate list existed, the term of eligibility had not expired, and mere considerations of convenience could not justify the preparation of a new list to the prejudice of the definite right accrued in the relator.

In fact, the respondents have by their acts committed themselves to the proposition that the list of July 16, 1899, was appropriate in the sense contended for by the relator. Although the new examination had not been taken by him, the list of January 29, 1900, based upon it, included his name, placing it fourth eligible for positions in the courts of general and special sessions, third eligible for the magistrate's court, borough of Manhattan, and, to quote the opposing affidavits, "not eligible for the city court, because the examination taken by him on March 16, 1899, was only for the criminal courts." In other words, the respondents recognized the appropriateness of the prior list by incorporating it in toto, as appears from the affidavits, into the new one, arranging all the names according to their respective percentages. If the first list was inappropriate, the relator's name, as well as any other thereon contained, was improperly on the second list. It is to be noted that the latter did not supply the deficiency which was made the excuse for the general examination. The list of January 29, 1900, contains no resident of Queens. If the contention of the respondents were sound, a new examination for all the boroughs could be held with uninterrupted frequency until a qualified candidate for Queens was listed. Neither the White act nor the rules will permit such an anomalous condition to obtain. The act contemplates, not merely permanency of tenure so long as merit shall continue, but also a reasonable stability of the accrued right to ap-

pointment. The procedure adopted was subversive of the spirit and intent of the act, which must always furnish the primary canon of its construction.

Mandamus will issue.